**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BYRON CARRIERE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2768 |
| | § | |
| AKBAR SHABAZZ, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Byron Carriere, a state inmate proceeding *pro se* and *in forma pauperis*, filed this lawsuit under 42 U.S.C. § 1983 complaining of violations of his civil rights. Defendants[1] filed a motion for summary judgment. (Docket Entry No. 61.) Plaintiff did not file a pleading specifically designated as a response, but the Court has construed his subsequently-filed letters and documents as his response in opposition to the motion. (Docket Entries No. 62, 63, 65, 66, 67.) After consideration of the pleadings, the motion and response, the

---

[1] In his original complaint, plaintiff raised claims against prison employees Akbar Shabazz, Tracy Bailey, Steven Jeffcoat, and Nancy Alger. (Docket Entry No. 1.) He subsequently filed an amended complaint, deleting Bailey, Jeffcoat, and Alger as defendants and naming prison employee Lonny L. Johnson as a defendant. (Docket Entry No. 14.) It is unclear whether plaintiff intended to dismiss Bailey, Jeffcoat, and Alger as defendants. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). In the interest of justice, and with the leniency generally afforded *pro se* litigants, the Court construes the amended complaint as a supplemental complaint, such that all five named individuals are defendants. This construction causes no surprise or prejudice to defendants, as their motion for summary judgment was filed on behalf of all five defendants.

probative summary judgment evidence, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

*Background and Claims*

Plaintiff's pleadings and exhibits reflect his long and detailed history of dissatisfaction with and complaints regarding prison mailroom employees' handling of his inmate mail. Plaintiff's primary complaints in this lawsuit focus on a manuscript he claims to have written in prison – his "book" – which defendants "stole" by confiscating as contraband under inmate mail regulations.[2] Plaintiff further complains that defendant Shabazz "harassed" him about the "book" and attempted to change plaintiff's religious beliefs. Plaintiff also alleges that defendants interfered with and deprived him of his personal and legal mail by seizing, censoring, and not mailing letters he wrote to various media and legal sources, opening then re-sealing his legal mail, and giving him falsified certified mail receipts for letters that were not mailed. According to plaintiff, defendants conspired against him to steal the "book" and interfere with his inmate mail. Finally, he alleges that defendants retaliated against him by denying or not processing his grievances. He seeks injunctive relief to stop defendants from "harassing" him, and recovery of punitive damages for these violations of his constitutional rights which occurred between mid-2005 through 2006.

---

[2] No details of this purported "book" appear in the record; plaintiff simply refers to it as a notebook or writings of his own religious prophecies and beliefs. The Court adopts plaintiff's use of quotation marks to identify these writings as his "book" for purposes of this lawsuit.

*Summary Judgment Standard of Review*

Summary judgment is proper under Rule 56, Federal Rule of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.* at 322-24; Rule 56(e); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

*Claim for Loss of Personal Property*

Plaintiff claims that defendants stole his "book" by confiscating it as contraband under prison mail regulations. He seeks punitive, and possibly compensatory, damages for this loss of personal property.

An inmate's allegation that his property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally. *Hudson v. Palmer*, 468 U.S. 517 (1984); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). In Texas, when an inmate's property is taken without compensation, his remedy is in state court,

not federal court. *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983). Plaintiff's claim for the loss of his confiscated "book" fails to state a cognizable section 1983 claim, and defendants are entitled to summary judgment on this issue.

*Claims for Interference with Inmate Mail*

Plaintiff complains that defendants violated his constitutional rights by interfering with, seizing, or censoring his incoming and outgoing legal, media, and general mail. Generally speaking, the Fifth Circuit holds that prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional rights: (1) the right of access to the courts, which lies in both the due process clause and the First Amendment; and (2) the right to freedom of speech guaranteed by the First Amendment. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). The right of access to the courts is implicated only as to legal inmate mail, whereas the right to free speech is relevant to claims involving both legal and non-legal inmate mail.

Regardless of which rights are implicated, it is clear that a prisoner's constitutional rights with respect to mail are not absolute. A prison practice or regulation may permissibly interfere with an inmate's mail, including his legal mail, if the practice is reasonably related to a legitimate penological interest. *Brewer*, 3 F.3d at 824; *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).

A.	*Interference With Legal Mail*

To the extent plaintiff complains that defendants' interference with his legal mail denied him access to the courts, it is well established that prisoners enjoy a limited constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996). This right of access for prisoners encompasses only a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 353-54 (1996).

To prevail on a denial of access to courts claim, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a non-frivolous, arguable legal claim was hindered by prison officials. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 343. Further, the prisoner must show an actual injury. *Lewis*, 518 U.S. at 351-53. "Actual injury" in this context requires some hindrance to the inmate's effort to pursue a legal claim. *Lewis*, 518 U.S. at 351. In other words, the prisoner must show that his legal position has been actually prejudiced. *See Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). In short, a prisoner must show that he was prevented from presenting a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998).

Case 4:06-cv-02768   Document 80   Filed in TXSD on 09/10/08   Page 6 of 19

In the instant case, however, plaintiff has not demonstrated, nor does the summary judgment evidence show, any actual injury from defendants' purported interference with his legal mail. Plaintiff merely alleges, in a conclusory manner, that defendants seized or censored his legal mail, and that such acts, standing alone, constitute an "actual injury." (Docket Entry No. 62, p. 24.) Even assuming that defendants "interfered" with plaintiff's legal mail, he fails to show that any ongoing viable litigation was disrupted by such interference, that a viable lawsuit was preemptively dismissed, or that he was prevented from timely filing a meritorious lawsuit. Accordingly, his access to the courts claim fails. *See Lewis*, 518 U.S. at 356.

Moreover, plaintiff's argument that his incoming legal mail was opened, inspected, and resealed outside his presence, also fails to raise an issue of constitutional dimension. The Fifth Circuit holds that content inspections of legal mail outside an inmate's presence does not, standing alone, give rise to a constitutional violation in absence of proof that such act was prejudicial to the inmate's access to the courts, and when the practice was reasonably related to legitimate penological interests. *Brewer*, 3 F.3d at 825. The Fifth Circuit recognizes that the practice of content inspections, in or without the inmate's presence, is reasonably related to legitimate penological interests. *Id*. Regardless, plaintiff here fails to present probative summary judgment evidence that defendants' opening and resealing of his legal mail without his presence caused him actual prejudice in his access to the courts.

6

Plaintiff's claims that his outgoing legal mail addressed to various Texas criminal defense attorneys was censored or never mailed, likewise fail. As purported proof of defendants' acts, plaintiff asserts that he received responses from attorneys located out of state, but none from attorneys located within Texas. These assertions, even if true, do not stand as probative summary judgment evidence in support of plaintiff's claim. Lack of a response from an addressee does not establish a genuine issue of material fact as to whether prison officials interfered with an inmate's outgoing legal mail. *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 860, 860 (5th Cir. 2004).

Plaintiff argues that defendants interfered with his right to privacy by opening, reading, and censoring his mail, or by refusing to mail it. As purported proof of defendants' acts, plaintiff again states he posted numerous letters to various attorneys, but that none responded. Accepting as true plaintiff's allegation that these individuals did not respond to his letters, it does not stand as probative summary judgment evidence of either censorship by defendants or their failure to process his mail. *Id*. Equally insufficient to raise a genuine issue of material fact is plaintiff's conclusory allegation that defendants "obviously" gave him falsified certified mail receipts to hide their illegal actions. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Defendants are entitled to summary judgment dismissing these claims.

7

B.  *Interference with Non-Legal Mail*

Plaintiff claims that defendants' interfering with his non-legal media and general mail violated his right to free speech. While it is true that prisoners are not stripped of all First Amendment rights upon incarceration, the Supreme Court has made clear that prisoners retain only those free speech rights not inconsistent with their status as prisoners or with the legitimate penological objectives of the prison system. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). A prisoner's freedom from censorship under the First Amendment as to his incoming mail is not the equivalent of freedom from inspection or perusal. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

Under some circumstances, prisoners enjoy a limited First Amendment right to communicate with the press. So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, prison officials are accorded latitude in fashioning restrictions on time, place, and manner of such communications. *Stefanoff v. Hays County*, 154 F.3d 523, 527 (5th Cir. 1998). Such restrictions, however, must be reasonably related to a legitimate penological interest. *Id.* Prison officials are permitted to open and read all of an inmate's non-privileged general correspondence due to the legitimate penological concerns regarding security, order, and rehabilitation. *Busby v. Dretke*, 359 F.3d 708, 721 (5th Cir. 2004).

In the instant case, plaintiff presents no probative summary judgment evidence that any type of content discrimination has taken place. Absent such discrimination, the issue

becomes whether plaintiff has been afforded a reasonable and effective means of communicating with the media. Although plaintiff alleges that his non-legal mail was inspected or not mailed, he provides no probative summary judgment evidence that such interference took place. On the contrary, defendants present competent summary judgment evidence that plaintiff had the ability to send and receive media mail on a regular basis.[3] Plaintiff fails to establish that defendants denied him a reasonable and effective line of communication with the media, and defendants are entitled to summary judgment dismissing these claims.

Plaintiff also asserts that defendants violated his right to communicate with his family. The constitutional right to be free from censorship regarding outgoing non-legal and non-media mail is also rooted in the First Amendment, and the applicable legal standards remain the same as those applied to inmate media mail. Under the facts presented here, a lengthy legal analysis of this issue is unnecessary. Plaintiff's claim arises from two purported instances of censorship or interference. In the first instance, plaintiff claims that his sister did not receive a letter he sent; in the second instance, plaintiff claims that his brother responded "inappropriately" to plaintiff's earlier letter. Plaintiff provides this Court with nothing more than his non-probative conclusory allegations that these alleged incidents were

---

[3]For instance, TDCJ mail logs show that plaintiff mailed media documents on January 30, 2006; February 21, 2006; February 24, 2006; March 3, 2006; March 15, 2006; March 22, 2006; August 16, 2006; and December 20, 2006; and that he received media mail on August 23, 2006. (Docket Entry No. 61, Exhibit B, pp. 1- 23, 34.)

caused by defendants' illegal interference with his mail. Allegations that an inmate received no response to his mail does not stand as probative evidence that prison employees interfered with the inmate's mail. *See Freeman*, 369 F.3d at 860.

Plaintiff also claims that defendants interfered with his right to privacy by opening, reading, censoring, and refusing to mail his non-legal mail. As proof, plaintiff reports that he posted numerous letters to various media personalities, but they never responded. Applying this same reasoning, plaintiff asserts that defendants "falsified" his certified mail return receipts. Plaintiff's allegation that these individuals or entities did not respond to his letters does not stand as probative evidence of either censorship or defendants' failure to send out his mail, as his intended mail recipients simply may have chosen not to respond to his communications. *See id.*

According to the uncontroverted affidavit testimony of Janis Scott, Wynne Unit Mailroom Supervisor,

> Offender correspondence is administered in the [TDCJ] in accordance with Texas Board of Criminal Justice Policy 03.91, Uniform Offender Correspondence Rules.
>
> Offender correspondence is not subject to censorship. Should an item be undeliverable, that specific item is rejected. A written statement is prepared by the Mailroom Supervisor which is sent to both the offender and the sender/addressee. The criteria for rejection includes: contains threats of physical harm, threatens blackmail or extortion, concerns sending contraband, concerns plans for escape, involves violation of institutional rules, future criminal activity, uses code and content is not understood by the inspecting staff, solicits gifts of goods or money, presentation of sexual behavior that is in violation of law, contains sexually explicit images, promotes danger of

> violence or physical harm, or contains information regarding the manufacture of explosives, weapons, and/or drugs.
>
> Offender general correspondence is examined for content in the mailroom by TDCJ staff without the offender being present. Offender sealed mail received from legitimate Legal, Special, and Media is held unopened pending notification to the offender to come to the mailroom. Upon arrival at the mailroom, the offender is required to identify themselves [sic] by their [sic] TDCJ identification card. Once the offender's identification has been established, the offender's legal, special, or media letter is opened by a TDCJ staff member who conducts a content inspection. Content inspection pertaining to sealed mail is restricted to a search for physical contraband only. Content inspections are completed as a safety precaution to protect all offenders and staff from potential harm. Staff are prohibited from reading sealed mail. Upon confirmation that the letter contains no physical contraband, the letter is given to the offender and the offender is dismissed from the mailroom window. . . . *On 10/01/07 I searched all current and archived Wynne Unit Mailroom records which revealed no items had been rejected in conjunction with any correspondence to or from offender CARRIERE between May 2005 through December 2006.*

(Docket Entry No. 61, Exhibit G, original emphasis.) Plaintiff presents no probative evidence controverting Scott's testimony that the prison mailroom did not reject any of plaintiff's mail between May 5, 2005, and December 2006, the time period relative to his claims in this lawsuit.

Plaintiff fails either to state a cognizable constitutional claim or raise a genuine issue of material fact as to his claims regarding his inmate mail. Defendants are entitled to summary judgment dismissing these claims.

*First Amendment Claims*

Plaintiff claims that one or more defendants violated his rights of free speech and religious freedom by confiscating his "book" and attempting to persuade him to change his religious affiliation. Plaintiff seeks punitive damages for and injunctive relief against these and related "harassments," and requests that defendants be ordered to adhere to all, and to only, existing written rules and policies in processing his mail.

The Fifth Circuit makes clear that under 42 U.S.C. § 1997e(e), an inmate may not recover compensatory damages for First Amendment violations in absence of a physical injury. *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). As plaintiff concedes in his more definite statement that he was not physically injured by defendants as a result of any First Amendment violation, any request by plaintiff for recovery of compensatory damages fails as a matter of law.

The Fifth Circuit also makes clear, however, that the physical injury requirement of section 1997e(e) does not apply to an inmate's claim for punitive damages. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007). This distinction affords plaintiff no relief, as he presents no probative summary judgment evidence of conduct by defendants so egregious or reprehensible as to warrant recovery of punitive damages. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Regardless, plaintiff fails to establish a constitutional violation for which punitive damages may be awarded. *See Hutchins,* 512 F.3d 193 at 196-98. In making only a passing reference to loss of his manuscript as a denial

of religious freedom, and by asserting nothing more than a conclusory allegation that his free exercise rights were violated, plaintiff fails to articulate and prove a viable constitutional claim. *See Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To the extent plaintiff seeks permanent injunctive relief prohibiting future First Amendment "harassment," his request will be denied as he does not meet the requirements for prospective injunctive relief of injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff establishes no injury in fact caused by the acts of any defendant or a substantial likelihood of a future injury warranting prospective injunctive relief. *See Geiger*, 404 F.3d at 375. Moreover, that plaintiff and Shabazz may have differences of opinion on certain political and religious issues does not justify this Court's granting of prohibitory prospective injunctive relief against Shabazz.

To the extent plaintiff claims that defendants denied him access to the courts by limiting his writing supplies and law library time, he presents no probative summary judgment evidence of actual prejudice or harm, and no constitutional violation is shown. *See Lewis*, 518 U.S. at 356.

*Claims for Violation of Inmate Mail Policies and Regulations*

Plaintiff contends that, by failing to give him notice of censorship or confiscations of his mail, opening his mail without his presence, and repeatedly "botching up" his inmate mail, defendants violated Mailroom Policy 03.91 and denied him due process. In making this argument, plaintiff admits that Texas Board of Criminal Justice Policy 03.91, Uniform

13

Offender Correspondence Rules, is a legal policy. (Docket Entry No. 62, p. 4.) He instead argues that defendants must have confiscated his "book" under an "unidentified" but illegal unwritten mailroom policy, because they failed to comply fully with Mailroom Policy 03.91. As plaintiff presents no evidence of this unidentified policy or its illegality, the Court liberally construes these argument as claims for defendants' violations of written inmate mailroom policies and regulations.

Plaintiff's claims that defendants violated prison mailroom regulations lack a legal foundation. A violation of prison regulations, without more, does not give rise to a federal constitutional issue. *Myers v. Klevenhagen*, 97 F,3d 91, 94; *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Plaintiff's claims for violations of prison mailroom policies and regulations will be dismissed for failure to state a claim.

*Claims for Failure to Investigate or Remedy Grievances*

Plaintiff asserts that defendants failed to investigate or remedy his grievances and other written complaints. An inmate does not have a federally-protected liberty interest in having his grievances investigated or resolved to his satisfaction. *Geiger*, 404 F.3d at 374. Plaintiff's allegations rely on a nonexistent legal interest, and defendants are entitled to summary judgment dismissing these claims.

*Retaliation Claims*

Plaintiff alleges that defendant Johnson retaliated against him by denying his grievances, and that other defendants retaliated against him by tampering with his mail.

14

In order to state a valid claim for retaliation under section 1983, an inmate must allege and prove (1) a specific constitutional right, (2) defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Conclusory allegations of retaliation will not withstand a summary judgment challenge, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and the inmate must allege more than his personal belief that he is the victim of retaliation. *Id.*; *see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). He must produce direct evidence of motivation or present a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. "Causation" requires the inmate to establish that, but for the retaliatory motive, the incident made the basis of his complaint would not have occurred. *Id.*

This Court's careful review of plaintiff's response and the record reveals no probative summary judgment evidence that defendants retaliated against him. Plaintiff's conclusory allegations of retaliation fail to establish direct evidence of motivation or a chronology of events from which this Court may plausibly infer retaliation, nor do they demonstrate that, but for a retaliatory motive, the incidents would not have happened. Defendants are entitled to summary judgment dismissing plaintiff's retaliation claims.

*Conspiracy Claims*

Plaintiff alleges that defendants conspired to enforce an illegal mail regulation in order to steal his "book." (Docket Entry No. 1, p. 3.) As plaintiff admits in his response that the

15

written policy used by defendants to confiscate his manuscript was legal, the Court construes his claim as arguing that defendants conspired to confiscate or steal his "book."

To establish a conspiracy claim under section 1983, plaintiff must show an actual violation of his constitutional right and an agreement by defendants to commit the illegal act. *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). In presenting only conclusory allegations that defendants acted together in violating his constitutional rights, plaintiff fails to create an issue of material fact regarding either a violation cognizable under section 1983 or defendants' agreement to violate his constitutional rights. "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under [section] 1983." *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir.1986); *see also Arseneaux*, 726 F.2d at 1024.

Plaintiff states no viable claim in arguing that defendants "conspired" to confiscate his manuscript under Mailroom Policy 03.91. Defendants deprived plaintiff of no constitutional rights in confiscating his property as contraband under an existing, legal prison policy or regulation, nor can parties "conspire" to a legal act.

Nor is plaintiff entitled to relief under his claim that defendants conspired to steal his "book." Plaintiff admits that defendants confiscated his "book" as contraband under Mailroom Policy 03.91. That plaintiff disagrees with the propriety of that act, or complains that defendants failed to comply fully with all requirements of that regulation, does not give rise to a viable conspiracy claim. Plaintiff presents nothing more than his own conclusory

allegations that defendants conspired against him. Defendants are entitled to summary judgment dismissing his conspiracy claims.

*Eleventh Amendment Immunity*

To the extent plaintiff seeks monetary damages against defendants in their official capacity, his claims are barred by the Eleventh Amendment. A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars suit in federal court for monetary damages against a state or state agency. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted where appropriate. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). As plaintiff fails to establish that defendants violated his constitutional rights, his recovery of damages of any nature is unwarranted. Defendants are entitled to summary judgment dismissing plaintiff's claims against them in their official capacities.

*Unexhausted Claims*

Defendants correctly argue that plaintiff failed to pursue through completion Step 1 and Step 2 grievances for his claims that prison officials wrongfully performed strip searches and cell shakedowns. A review of plaintiff's grievance records fails to reveal his exhaustion of these claims, and he presents no probative summary judgment evidence to the contrary.

Accordingly, these claims are barred. *See Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006). Even assuming exhaustion, plaintiff does not show that the defendants named in this lawsuit were the prison officials responsible for such actions, and his claims lack an arguable basis in fact.

Defendants further correctly argue that plaintiff failed to exhaust any claims that his work assignments violated medical restrictions. The record reflects no properly-filed and exhausted Step 1 and Step 2 grievances as to these allegations, and plaintiff presents no probative summary judgment to the contrary. Accordingly, the claims are barred. *Woodford*. Even assuming exhaustion, plaintiff again fails to show that the defendants named in this lawsuit were the prison officials responsible for such actions, and his claims lack an arguable basis in fact.

Defendants are entitled to summary judgment on their affirmative defense of failure to exhaust, and these claims are dismissed for failure to exhaust.

*Motion to Compel Discovery*

In his motion for an order compelling discovery under Federal Rules of Civil Procedure Rule 37(a) (Docket Entry No. 73), plaintiff requests the Court to order defendant Johnson to make copies of certain documents in plaintiff's possession for plaintiff's use in opposing summary judgment. Defendants oppose the motion, arguing that the motion is not a proper motion to compel discovery under Rule 37(a). (Docket Entry No. 74.) The Court agrees. Plaintiff's motion does not seek to compel an existing discovery order, but rather, seeks free photocopying services. The motion (Docket Entry No. 73) is DENIED.

*Conclusion*

For the reasons stated above, the motion for summary judgment (Docket Entry No. 61) is GRANTED and this case is DISMISSED. Any and all other pending motions are DENIED AS MOOT.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on September 10, 2008.

_____
Gray H. Miller
United States District Judge